# STATE OF MICHIGAN

# COURT OF APPEALS

LONGHORN ESTATES, L.L.C.,

        Plaintiff/Counter Defendant,

v

CHARTER TOWNSHIP OF SHELBY,

        Defendant/Third-Party
        Plaintiff/Counter Plaintiff/Cross
        Plaintiff-Appellant,

v

CAPITAL CONTRACTING, INC.,

        Defendant/Counter Plaintiff/Cross
        Defendant,

and

OHIO CASUALTY INSURANCE COMPANY,

        Third-Party Defendant-Appellee,

and

ANDERSON ECKSTEIN & WESTRICK, INC.,

        Third-Party Defendant.

UNPUBLISHED
March 1, 2016

No. 324769
Macomb Circuit Court
LC No. 2011-001693-CZ

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

        Defendant Charter Township of Shelby (Shelby), appeals as of right the judgment entered after a jury trial in this action seeking payment under a maintenance and guarantee bond. Of relevance to this appeal, the trial court granted the motion for summary disposition filed by third-

party defendant Ohio Casualty Insurance Company (Ohio Casualty), dismissing Shelby's breach of the bond claims, and denied Shelby's motion for relief from judgment. We affirm.

This case arises from the construction of a sanitary sewer system (the Project) on the property of plaintiff Longhorn Estates, L.L.C. (Longhorn). Shelby entered a contract with third-party defendant Anderson, Eckstein and Westrick, Inc. (AEW) to provide engineering services for the Project. Shelby hired defendant Capital Contracting, Inc. (Capital) to construct the Project. Based on the contract between Shelby and Capital, Ohio Casualty issued a maintenance and guarantee bond on July 21, 2008. The bond provided in relevant part:

> [T]he above named principal has agreed with the said Owner that for a period of **two years** from the date of payment of Final Estimate, to keep in good order and repair any defect in all the work done under said contract either by the principal or his subcontractors, or his material suppliers, that may develop during said period due to improper materials, defective equipment, workmanship or arrangements, and any other work affected in making good such imperfections, shall also be made good all without expense to the Owner, excepting only such part or parts of said work as may have been disturbed without the consent or approval of the principal after the final acceptance of the work . . .

Construction of the project began in August 2008. AEW hired G2 Consulting Group to test Capital's trench compaction during construction. The "Daily Reports" from G2 Consulting Group on August 28, 2008, August 29, 2008, September 17, 2008, September 18, 2008, and September 24, 2008, indicated that numerous field density tests were below the desired 90% compaction. On October 28, 2008, Steven Mancini, an authorized member of Longhorn, sent a letter to Shelby stating that additional compaction tests may be required and that final payment should not be made until the issue was resolved. On April 9, 2009, Mancini sent another letter to Shelby stating that there had been no response regarding the compaction testing and further payment should not be made to Capital until the issues were resolved.

Shelby hired Soil and Materials Engineers, Inc. (SME) to conduct a "Supplemental Geotechnical Evaluation" of the Project. A report from SME dated September 3, 2009, noted problems with the density of the backfill, but concluded that the sewer pipe "should function as intended." On February 24, 2010, Shelby placed Capital on notice of defects in the Project, referencing the SME report, and demanded correction or repair. On March 8, 2010, Capital responded that there were no defects in its work.

The parties do not dispute that final payment, or "Final Estimate" under the bond, was made on December 13, 2010. On December 20, 2010, Somat Engineering, which was retained by Longhorn to evaluate compaction, indicated in a report that "the condition of the soil backfill above the sewer line is abysmal." On February 17, 2011, Shelby demanded that Capital remedy the compaction issues.

On April 20, 2011, Longhorn filed a complaint against Shelby and Capital. On September 13, 2011, Shelby filed a third-party complaint against Ohio Casualty, alleging that Capital breached its contract with Shelby "by failing to compact the trench as required" and refused to remediate "the compaction defects." Shelby further alleged that Ohio Casualty

refused to respond to Shelby's demand that it remediate the compaction pursuant to the bonds.[1] Shelby claimed that Ohio Casualty breached its contract and sought damages. On December 13, 2011, Shelby filed a first amended third-party complaint, adding AEW as a defendant. The first amended complaint continued to refer to the alleged defect as "compaction."

A Somat report dated July 17, 2012, noted settlement, leaking, as well as possible deformation of the pipe. Based on that report, on October 12, 2012, Shelby's counsel sent a demand on the bond to Ohio Casualty.

On October 23, 2013, Ohio Casualty filed a motion for summary disposition on Shelby's claims related to the maintenance and guarantee bond. Ohio Casualty argued that Shelby did not have a valid claim because the defect did not develop during the two-year period starting from the date of payment of the Final Estimate. Ohio Casualty further argued that, in its first amended third-party complaint, Shelby claimed that the lack of compaction was the defect, but this defect developed well before the final payment was made on December 13, 2010. Ohio Casualty contended that Shelby knew that Capital had not met the 90% compaction standard before making the final payment. Ohio Casualty also argued that Shelby had not incurred any damages that it could recover under the bond because, after Capital took no action in response to Shelby's letter demanding that it implement remedial repairs, Shelby failed to perform the remedial repairs.

On November 7, 2013, the trial court granted, in part, Shelby's motion for leave to file a second amended complaint, which was filed on October 21, 2013.[2] The trial court took Ohio Casualty's motion for summary disposition under advisement.

On November 21, 2013, Shelby filed a response to Ohio Casualty's motion for summary disposition. Shelby argued that it had a valid claim under the bond because a defect may develop, due to improper materials and workmanship, within two years from the date of the final estimate. Shelby further argued that the two requirements of the bond were met because (1) Ohio Casualty conceded that there was "improper materials, defective equipment, workmanship or other arrangements" ("Deficient Work"), and (2) as a result of the Deficient Work, a defect developed during the coverage period, which was December 13, 2010, to December 13 2012, as Somat and SME concluded that the soil may fail during that period. Regarding the alleged defect, Shelby claimed that it "relied on the findings of SME and Somat that the failure to compact the backfill would lead to a defect—the soil settling more than permissible—if Longhorn constructed the planned improvements." Shelby further argued that the bond only required that the defective settlement *may* occur during the coverage period; in other words,

---

[1] Ohio Casualty also issued a Performance Bond, which is not at issue in this appeal.

[2] According to the trial court's opinion and order, Shelby moved to amend its third-party and cross complaints "in an effort to reflect the intent of the Amended Liquidation Agreement [between Longhorn and Shelby] and cure the issues identified in AEW and Ohio Casualty's motions for summary disposition." The trial court denied Shelby's motion "to the extent that it seeks to state claims against Ohio Casualty under the Performance Bond."

Shelby or Longhorn was not required to build a road and utilities to prove that the defective settlement would occur. Moreover, Shelby argued that Ohio Casualty did not specifically exclude defects that may develop before the coverage period. According to Shelby, under Ohio Casualty's interpretation, the bond would never provide coverage because every defect may develop when the improper materials are used or defective workmanship exists. Shelby argued that, at best, the "may develop" language was ambiguous and was a question of fact for the jury to decide. Finally, Shelby argued that it had a viable claim for damages because the language of the bond "anticipates that Shelby may have to pay another party for the repair costs."

On November 22, 2013, Ohio Casualty filed a reply to Shelby's response. It argued that the defective workmanship was Capital's failure to obtain 90% compaction and the defect was compaction that did not meet the contract specifications, both of which Shelby knew existed before the final payment. Ohio Casualty further argued that, while Shelby did not have to itself perform the remediation, it was required to hire someone to complete the repairs.

On November 22, 2013, Shelby filed its second amended cross and third-party complaint. In Count IV, Shelby alleged that Ohio Casualty breached the maintenance and guarantee bond. Shelby claimed that the sanitary sewer system was not properly constructed, that the failures included "failures to property dewater, layer and/or compact the backfill in the trench above the sanitary sewer," and that such failures "subject the soils to future settling which will likely cause the roads, sidewalks, and other improvements erected above the sanitary sewer to settle, crack, deteriorate and otherwise interfere with the completion and intended function of the [planned unit development]."

On November 26, 2013, Shelby filed a sur-reply to Ohio Casualty's motion. Shelby continued to argue that the defective workmanship was the "failure of compaction" and the defect was the "improperly compacted soil."

On September 5, 2014, the trial court entered an opinion and order granting Ohio Casualty's motion for summary disposition. The trial court found that "the parties had been advised that 90% compaction throughout had not been achieved prior to the time final payment was made. Consequently, because the soil was defective, i.e. was not properly compacted, prior to the beginning of the Covered Period, the compaction/soil defect did not arise during the Covered Period." The trial court dismissed Shelby's claims against Ohio Casualty based on the bond.

After a jury trial and verdict awarding damages in favor of Longhorn and Shelby against Capital, a judgment was entered on November 3, 2014. Before the judgment was entered, on October 20, 2014, Shelby filed a motion for relief from the September 5, 2014 order. Shelby argued that Ohio Casualty's motion for summary disposition referred to Shelby's first amended third-party complaint, which alleged improper compaction as the only defect. However, the second amended third-party complaint broadened the allegation of work defects based on the July 2012 Somat video survey, which showed improper settlement of the pipe and leaks that had developed since the final acceptance of the pipe. Shelby argued that it provided notice and demanded corrective action from Ohio Casualty on October 12, 2012. Shelby further argued that the defects resulted from Capital's failure to install the required amount of aggregate bedding above the sanitary sewer pipe, which it first became aware of in December 2012. However, at

that time, it did not know whether Capital failed to install the necessary bedding over the entire length of the sewer line.

The final day of the report from Ric-Man Construction, Inc., who was hired to remediate the Project, was October 4, 2013, just days before Ohio Casualty filed its motion for summary disposition, and the report showed bedding of only two to four inches. Shelby argued that its response to the motion addressed the compaction issues, but was filed before the second amended third-party complaint was filed. Shelby further argued that the "information continued to materialize and take shape over the ten months between the filing of Ohio Casualty's motion and the Court's September 5, 2014 decision on that motion," and that, at trial, Capital conceded that it failed to install the required amount of bedding. Shelby contended that, under these circumstances, the trial court erred by not addressing the expansion of its claims. Shelby also argued that the sewer line defects arising from Capital's bedding failures were covered under the bond because they emerged within the bond period and were unknown before final payment, and that the trial court's order was based on an incomplete record. It claimed that it did not have evidence that Capital failed to install the specified amount of aggregate at the time of final payment and, as a result of the insufficient amount of aggregate, a defect appeared within two years of final payment, as described in the July 2012 Somat report. Shelby requested that the trial court set aside the September 5, 2014 order as a mistake under MCR 2.604.

On October 30, 2014, Ohio Casualty filed a response to Shelby's motion. Ohio Casualty argued that Shelby was not entitled to rehearing or reversal because it was aware of the aggregate bedding issues since September 2008, well before Ohio Casualty filed its motion for summary disposition, but failed to assert the issues with aggregate bedding in its response to the motion. In support thereof, Ohio Casualty attached AEW's "Daily Reports," from September 2008, which it argued indicated that the bedding aggregate was less than 12 inches. Ohio Casualty urged that because MCR 2.604 does not provide a standard by which to judge whether revision is appropriate and because Shelby argued that Capital's failure to install the specific amount of aggregate was newly discovered evidence, the trial court should apply the standard for granting relief on the basis of newly discovered evidence under MCR 2.612.

On November 3, 2014, a hearing was held on Shelby's motion. Shelby stated that its motion was to "amend or revise" the order granting Ohio Casualty's motion for summary disposition. Shelby argued that Ohio Casualty never moved to dismiss the second amended third-party complaint, and that justice required revisiting the decision, which was based on briefing that focused on the first amended third-party complaint. Shelby further claimed that while it had "some indication" early on that there were issues related to the bedding, its lawyers did not have the information and did not know the significance of it. Shelby claimed that it was not clear until the summer of 2014 that Capital failed to install adequate aggregate bedding and that it did not know about the lack of aggregate bedding at the time of the final payment. Shelby requested that the trial court allow the parties to file cross-motions on the issue or conduct an evidentiary hearing. In response, Ohio Casualty argued that Shelby and its lawyers knew about the lack of aggregate bedding when Ohio Casualty first filed its motion for summary disposition, yet did nothing for a year, that this was not new evidence, and that the motion should be denied. Shelby replied that it did not have information regarding the lack of aggregate bedding when it responded to the motion.

On November 18, 2014, the trial court entered an opinion and order denying Shelby's motion for relief from the order. The trial court found that Capital's failure to install the specified amount of aggregate was not newly discovered evidence because the evidence "clearly establishes that Shelby was in possession of evidence that the aggregate bedding was insufficient well before the Court entered the Order at issue." This appeal ensued.

Shelby contends that the trial court should have granted its motion for relief from the September 5, 2014 order granting Ohio Casualty's motion for summary disposition because the sewer system defect developed during the coverage period of the bond. We disagree.

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion. *Yee v Shiawassee Bd of Comm'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 442; 814 NW2d 670 (2012). A trial court's factual findings are reviewed for clear error. *Vittiglio v Vittiglio*, 297 Mich App 391, 398; 824 NW2d 591 (2012). "A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Bronson Methodist Hosp*, 295 Mich App at 442.

Shelby cited MCR 2.604 in its motion for relief from the order. MCR 2.604(A) provides that a non-final order "is subject to revision before entry of final judgment adjudicating all the claims and the rights and liabilities of all the parties." However, MCR 2.604 does not provide any standard for courts to determine whether revision is proper. Rather, motions for relief from judgment or order are governed by MCR 2.612.

MCR 2.612(C)(1)(b) provides that a court may provide relief from a final judgment or order based on "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B)." The time for filing a motion for a new trial under MCR 2.611(B) is 21 days after entry of the judgment. To the extent that Shelby claimed that the evidence regarding the lack of aggregate bedding was newly discovered, the trial court did not clearly err in finding that Shelby knew about the aggregate bedding issue before the trial court decided the motion for summary disposition. According to Shelby's motion for relief from judgment, it was aware of the aggregate bedding issues at least on October 4, 2013. And even if it did not fully appreciate the significance of the issues until the summer of 2014, as it argued at the hearing on the motion, argument occurred before the trial court decided Ohio Casualty's motion for summary disposition on September 5, 2014. Despite its knowledge of the aggregate bedding issue, Shelby did not file a motion or inform the trial court of this additional information that it believed was relevant to the motion for summary disposition. Instead, it only raised the issue after the trial court's ruling on the motion was issued. Accordingly, the trial court did not abuse its discretion in ruling that relief was not warranted on the basis of newly discovered evidence.

Shelby's motion for relief from judgment and brief on appeal also suggest that relief was warranted based on the trial court's mistake in failing to address the allegations made in Shelby's second amended third-party complaint "Mistake, inadvertence, surprise, or excusable neglect" is an alternative ground for granting relief from judgment under MCR 2.612(C)(1)(a). Relief from final judgment or order may be granted on the basis of mistake made by the trial court.

-6-

*Fisher v Belcher*, 269 Mich App 247, 262; 713 NW2d 6 (2005). This Court has concluded that a mistake "might be sufficient to allow a trial court to grant relief from judgment," yet not warrant reversal of a trial court's denial of relief. *Limbach v Oakland Co Bd of Co Road Comm'rs*, 226 Mich App 389, 393; 573 NW2d 336 (1997). "MCR 2.612(C)(1)(a) was not designed to relieve counsel of ill-advised or careless decisions." *Id*. (citation and quotation marks omitted).

The trial court's order granting Ohio Casualty's motion for summary disposition focused on the allegation in Shelby's original and first amended third-party complaints that the defect was improper compaction. The trial court did not address the allegation in Shelby's second amended third-party complaint that the sanitary sewer system was improperly constructed. "[A]n amended complaint supersedes the original complaint." *Grzesick v Cepela*, 237 Mich App 554, 562; 603 NW2d 809 (1999). Thus, the trial court ruled on the wrong complaint. However, after filing its second amended third-party complaint, Shelby also continued to rely on the defect alleged in the original and first amended third-party complaints. In its sur-reply, filed after its second amended third-party complaint was filed, Shelby continued to refer to the defect as compaction. Shelby never argued or informed the trial court in the year before the trial court ruled on the motion for summary disposition that it believed the motion for summary disposition did not address the allegations in its second amended third-party complaint.

Moreover, while the second amended third-party complaint did allege that the sanitary sewer system was improperly constructed, it continued to refer to compaction issues, stating "failures to properly . . . compact the backfill in the trench above the sanitary sewer." Therefore, the second amended third-party complaint did not clearly indicate that Shelby was asserting a different alleged defect as the basis for its claims.[3] Accordingly, to the extent Shelby was alleging a new defect and changing the basis for its claim, it should have brought this issue to the attention of the trial court. As this Court has stated, "MCR 2.612(C)(1)(a) was not designed to relieve counsel of ill-advised or careless decisions." *Limbach*, 226 Mich App at 393 (citation and quotation marks omitted). Finally, while perhaps this mistake may have been sufficient to allow the trial court to grant relief from the order, it does not warrant reversal of a trial court's denial of relief. See *id*.

Shelby also contends that the bond's use of the term "defect" is latently ambiguous and is a question of fact for the jury. We need not reach this issue because, as discussed above, the trial court properly denied Shelby's motion for relief from judgment.[4]

---

[3] It also does not appear that the purpose of the amendment was to change its allegation regarding the defect. As noted above, the trial court stated that Shelby moved to amend its third-party and cross complaints "in an effort to reflect the intent of the Amended Liquidation Agreement [between Longhorn and Shelby] and cure the issues identified in AEW and Ohio Casualty's motions for summary disposition."

[4] Shelby also concedes that the failure to properly compact the soil, which was decided by the trial court in the order granting Ohio Casualty's motion for summary disposition, was not covered by the bond.

Affirmed.  Ohio Casualty may tax costs as the prevailing party.  See MCR 7.219.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray